UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TERRI FACCHINI,
    *Plaintiff*,

v.

RESURGENT CAPITAL SERVICES, L.P.
*et al.*,
    *Defendants*.

No. 3:22-cv-1621 (JAM)

## ORDER GRANTING MOTION TO DISMISS

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The plaintiff primarily claims that the defendants violated the Act by sending her a debt collection letter that set forth contradictory dates for her to dispute the validity of a debt. I conclude that the plaintiff has failed to show that she has standing and she has also failed to state plausible grounds for relief. Accordingly, I will grant the defendants' motion to dismiss.

### BACKGROUND

Plaintiff Terri Facchini incurred a debt that was sold to defendant LVNV Funding LLC, who then contracted with co-defendant Resurgent Capital Services, L.P. to collect the debt.[1] Facchini eventually received a debt collection letter dated June 8, 2022, and she claims that this letter was false and misleading in violation of her rights under the FDCPA.[2]

Facchini's claims focus on two passages from the letter. Both of them concern her right to "validate" the debt—that is, to dispute the validity of the debt and to have the debt collector in turn obtain a verification of the debt and to furnish this verification to the debtor along with the name and address of the original creditor.[3]

---

[1] Doc, #1 at 6 (¶¶ 22–27).
[2] *Id.* at 7 (¶¶ 32–33); *see* Doc. #1-1.
[3] *See* Doc. #1 at 9 (¶¶ 34–42).

1

The first passage of the letter reads:

> The state of CT requires us to provide the following notice: Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.[4]

According to Facchini, this first passage was "false" to the extent that it claimed that the State of Connecticut requires notice of these validation protections.[5]

The second passage reads:

> How can you dispute the debt?
>
> - Call or write to us by July 12, 2022, to dispute all or part of the debt. If you do not, we will assume that our information is correct.
>
> - If you write to us by July 12, 2022, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.
>
> What else can you do?
>
> - Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by July 12, 2022, we must stop collection until we send you that information. You may use the form below or write to us without the form.[6]

According to Facchini, this second passage—when read in conjunction with the first passage—was materially misleading. She bases this contention on the fact that the first passage gave her

---

[4] Doc. #1-1 at 3.
[5] Doc. #1 at 9 (¶ 40).
[6] Doc. #1-1 at 5 (emphasis omitted).

"30 days after receiving this notice" to contest the debt, while the second passage gave her a date certain—July 12, 2022—for her to dispute the debt.[7] Thus, she claims that "the Letter is materially misleading because it is open to more than one reasonable interpretation of the debt dispute period, at least one of which is inaccurate."[8]

As a result of the alleged inaccuracies, Facchini claims that she was unable to evaluate how to handle her debt.[9] In particular, Facchini alleges that the letter resulted in her nonpayment of the debt, thus leading to a negative credit furnishment, emotional distress, wasted time, money, and effort, and annoyance.[10]

Facchini alleges two claims on behalf of herself and a class of all others similarly situated. First, she claims that the letter violated § 1692e of the FDCPA by containing false and misleading representations.[11] Second, she claims that the letter violated § 1692g of the FDCPA because the validation notice was confusing, false, and contradictory.[12]

The defendants move to dismiss on two grounds. First, they move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that Facchini does not have standing and therefore that the Court lacks jurisdiction over her claims.[13] Second, they move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the complaint fails to state plausible grounds for relief.[14]

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts

---

[7] Doc. #1 at 9 (¶¶ 37–39).
[8] *Ibid.* (¶ 39).
[9] *Ibid.* (¶ 42).
[10] *Id.* at 10 (¶¶ 43–48).
[11] *Id.* at 12 (¶¶ 62–66).
[12] *Id.* at 12–14 (¶¶ 67–72).
[13] Doc. #17-4 at 6–9.
[14] *Id.* at 9–16.

that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[15] As the Second Circuit has explained, "[t]o state a plausible claim, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015). Moreover, "[w]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021).

The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

The FDCPA further requires debt collectors to include a validation notice in their communications to debtors:

> (a) … Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

---

[15] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

  (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

  (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* § 1692g(a).

Courts apply a "least sophisticated consumer" standard when deciding whether a particular communication violates the FDCPA. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (*per curiam*). "Under this standard, a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Ibid.* So, for example, a debt collector may violate the FDCPA "even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor" in a manner that would "make the least sophisticated consumer uncertain as to her rights." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).

But the "least sophisticated consumer" standard "will not render debt collectors liable for bizarre or idiosyncratic interpretations of debt collection letters or unreasonable misinterpretations of collection notices." *Pettaway*, 955 F.3d at 304. In other words, "the least sophisticated consumer standard still preserves the concept of reasonableness." *Rubin v. Montefiore Med. Ctr.*, 2021 WL 4538603, at *1 (2d Cir. 2021).

The "least sophisticated consumer" standard also includes a materiality requirement: "statements must be materially false or misleading to be actionable under the FDCPA." *Cohen v.*

*Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). A statement is material "if it has the potential to affect the least sophisticated consumer." *Ibid*. "The materiality inquiry focuses on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response." *Id*. at 86.

### *Standing*

The defendants first argue that Facchini lacks standing because she was not actually injured by their debt collection letter.[16] "[T]o plead Article III standing, a plaintiff must allege facts plausibly demonstrating '(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Brokamp v. James*, 2023 WL 3102704, at *6 (2d Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)). "To satisfy the first requirement, a plaintiff must plead an injury that is 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Ibid.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Merely alleging conduct that violates the FDCPA does not mean that Facchini has standing. Although "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," the Supreme Court has made clear that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05 (2021). Therefore, the fact that Congress has created "a statutory prohibition or obligation and a cause of action does not relieve courts of their

---

[16] Doc. #17-4 at 6–9.

responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205.

Instead, for an alleged injury to qualify as "concrete" for purposes of Article III, it must ordinarily bear a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204. That is, there should be "a close historical or common-law analogue for the[] asserted injury," although the analogue need not be an "exact duplicate." *Ibid.*; *accord Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).

What is the analogue here? "Given Congress's rationale for enacting the FDCPA and granting a right to be free from abusive debt practices, some courts have indeed recognized a common-law analog to the legally cognizable harms of fraudulent and negligent misrepresentation." *Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *6 (S.D.N.Y. 2021). Facchini's alleged injury may be analogous to a common law injury from a negligent misrepresentation. A negligent misrepresentation claim "requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Coppola Const. Co. v. Hoffman Enters. Ltd. P'ship*, 71 A.3d 480, 487 (Conn. 2013).

The problem, however, is that Facchini has not alleged facts—as distinct from legal conclusions—to plausibly show one of these elements: that she *relied* to her detriment on the alleged misrepresentations. As to the first alleged misrepresentation (that the letter falsely claimed that the State of Connecticut required the defendants to advise her of her validation rights), Facchini does not dispute that federal law independently required the defendants to advise her of her validation rights, *see* 15 U.S.C. § 1692g(a), and she does not dispute that the

7

notice of rights she received in the first passage tracks what is required by federal law. Even assuming she is correct that state law does not additionally impose the same requirements as federal law, she does not allege any facts to show that this redundancy made any difference to her. She was advised of her validation rights all the same—and it made no conceivable difference to her whether the notice was required by federal law, by state law, or by both. Therefore, she has not plausibly alleged reliance to her detriment on the alleged misrepresentation concerning whether state law required notice of her validation rights.

As to the second alleged misrepresentation (that the letter confusingly sets forth the dates for her to dispute the debt and seek validation), Facchini claims she was "unable to evaluate her options of how to handle this debt," such that there was "a resulting inaction/non-payment."[17] But she does not allege facts to suggest how or why the discrepancy between the dates set forth in the first and second passages of the letter made her "unable" to evaluate her options in a manner that led her to not exercise her rights to dispute the debt.

It would be one thing if Facchini alleged that she acted to dispute the debt but that, because of confusion about the dates created by the letter, she acted too late. Here, however, she does not allege that she *ever* acted to try to dispute the debt, much less that she acted within the *latest* time period that she believes the letter advised (that is, by July 12, 2022). Therefore, she has not plausibly alleged reliance to her detriment on the alleged misrepresentation concerning how long she had to dispute the debt.

This case is distinguishable from *Thome v. Sayer L. Grp., P.C.*, 567 F. Supp. 3d 1057 (N.D. Iowa 2021), in which the court concluded that a plaintiff had standing for an FDCPA claim that was based on an alleged misrepresentation that the plaintiff had only 14 days rather

---

[17] Doc. #1 at 9-10 (¶¶ 42, 46).

than 30 days to contest the debt. *Id.* at 1072–80. The expanded record in that case established ample factual grounds to conclude that the date discrepancy resulted in actual harm to the plaintiff. It showed that the plaintiff chose "not to obtain representation and dispute her debt because she believed she did not have enough time," *id.* at 1075, and the court found that "[h]ad plaintiff been free of defendant's misrepresentation about the fourteen-day limitation, she would have obtained an attorney and asserted that right" to dispute the validity of her debt, *id.* at 1076. No such allegations of reliance have been plausibly advanced here.[18]

Nor do any of Facchini's remaining allegations of general confusion and resulting stress suffice to support standing. As the Second Circuit has recently ruled in a similar context, "[a] perfunctory allegation of emotional distress … is insufficient to plausibly allege constitutional standing." *Maddox*, 19 F.4th at 66; *see also Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (noting that "bare allegations of confusion and anxiety do not qualify as injuries in fact"); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (noting that "the state of confusion is not itself an injury," "[n]or does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm"); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021) ("Multiple courts have found alleged confusion to be insufficient for standing in the FDCPA context."). Accordingly, because Facchini has not alleged facts to plausibly show that she relied to her detriment on any of the alleged misrepresentations, she has no standing as required to sustain federal jurisdiction.

---

[18] The district court in *Thome* allowed the parties to engage in discovery with respect to the issue of the plaintiff's standing. *See Thome*, 567 F. Supp. 3d at 1063, 1069. Neither party has requested an opportunity to conduct jurisdictional discovery here.

*Failure to state a claim*

Even assuming Facchini had standing, she has failed on the merits to allege plausible grounds for relief. As to the first alleged misrepresentation (that the letter falsely claimed that the State of Connecticut required the defendants to advise her of her validation rights), the truth of the matter is that Connecticut law requires that "[e]ach consumer collection agency shall comply with the applicable provisions of the Fair Debt Collection Practices Act, 15 USC Section 1692 et seq., as from time to time amended, and any regulations adopted under said act." Conn. Gen. Stat. § 36a-812. Because—as noted above—§1692g(a) of the FDCPA requires notice of the validation rights that Facchini received, it is clear as day that there is no merit to her allegation that the letter was false when it claimed that the State of Connecticut requires notice of such rights. Indeed, Facchini's opposition to the defendants' motion to dismiss makes no attempt to defend this aspect of her complaint.

As to the second alleged misrepresentation (that the letter confusingly sets forth the dates for her to dispute the debt and seek validation), Facchini has failed to allege facts to show that the letter's alleged date discrepancy was materially misleading. She claims that there is a discrepancy between the date set forth in the first passage ("30 days after receiving this notice") and the date set forth in the second passage (July 12, 2022).

As an initial matter, the complaint alleges that "thirty (30) days from the date of the Letter, July 8, 2022, is a reasonable interpretation of the debt dispute deadline."[19] But that is not a reasonable interpretation, because it ignores that the first passage of the letter explicitly says

---

[19] Doc. #1 at 9 (¶ 37); *see also* Doc. #18 at 11 (memorandum in opposition to motion to dismiss arguing that "the Letter can be interpreted in one of two ways, *that the 30-day validation period provided under 1692g expires thirty days from June 8, 2022, the date of the Letter*, or, as specified in the Second Validation notice, expires on July 12, 2022") (emphasis added); *id.* at 26 (arguing that "it is impossible to tell the nature of the deadline to dispute the debt, whether it is 30 days from June 8, 2022, the date of the Letter, or July 12, 2022").

10

that Facchini had until "30 days *after receiving this notice*."[20] The letter says nothing to suggest that the 30 days ran from the date of the letter itself rather than the date of receipt of the letter. This aspect of the letter is fully consistent with the FDCPA, which requires a debt collector to allow a debtor to dispute a debt within "thirty days after receipt of the notice." 15 U.S.C. § 1692g(a)(3); *Jacobson*, 516 F.3d at 92–93 (same).

Although the complaint states that the letter was dated June 8, 2022, it is conspicuously silent about the date that Facchini received the letter. But Facchini's counsel stated at oral argument that she received the letter the very next day on June 9, 2022. This means that the FDCPA allowed Facchini only until July 9, 2022—30 days from June 9, 2022—to dispute the debt.

Was it improper for the second passage of the letter to say that Facchini had until July 12, 2022 to dispute the debt—that is, to allow her *more* time than the law required? No, it was not. Congress enacted the FDCPA to deter abusive debt collection practices, not to stop debt collectors from being more generous or forgiving to debtors than the law requires. As Judge Larimer has observed, "the FDCPA creates a minimum national standard for debt collection practices and it would be antithetical to that purpose to prohibit a debt collector from going above a minimal standard." *Kurzdorfer v. Constar Fin. Servs., LLC*, 490 F. Supp. 3d 663, 670 (W.D.N.Y. 2020).

What of the fact that the least sophisticated consumer might have found it confusing to be told a date certain (here, July 12) that is not precisely or necessarily the same as the date that is 30 days from the receipt of the letter (here, July 9)? As one court has observed, "simple 'confusion' in the colloquial sense is not legal 'confusion' as contemplated in the FDCPA,"

---

[20] Doc. #1 at 7 (¶ 34) (quoting the letter) (emphasis added).

because "[c]ourts finding that a debt collector's communication is confusing have only done so when this confusion bears the potential to adversely affect the debtor." *Young v. G.L.A. Collection Co.*, 2011 WL 6016650, at *2 (S.D. Ind. 2011). And so the court in *Young* ruled there was no adverse effect on the debtor when she received a debt collection letter that gave her 30 days to dispute the debt and then later received a second debt collection letter that gave her yet 30 more days to dispute the debt. "In providing an additional 30 days, the debt collector has simply provided more than the statutory minimum required by the FDCPA." *Id.* at *3 n.3; *see also Kurzdorfer*, 490 F. Supp. 3d at 670 (similarly ruling that a second debt collection letter "only enlarged [plaintiff's] rights under the FDCPA by affording her more than thirty days to dispute her debt" and "created no reasonable possibility of confusion in derogation of [her] rights").

It would be one thing if Facchini had disputed her debt on July 12 but then the defendants claimed that she waited too long beyond what the FDCPA allows. But that's not what happened here. *See Young*, 2011 WL 6016650 at *3 n.3 (noting that "[a] separate issue could arise if a debt collector sent a notice providing for an additional 30 days and then refused to honor the debtor's request for validation made during the second 30–day period").

In short, the defendants did not violate the FDCPA when they allowed Facchini more time to dispute her debt than the law required. "When read by the least sophisticated debtor, nothing in the letter's current wording would discourage a debtor from contesting the debt within the thirty day window." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 366 (2d Cir. 2005). Those cases relied on by Facchini that involved debt collectors who allowed *less* time than the law required are obviously distinguishable. *See Jacobson*, 516 F.3d at 95 (FDCPA violation where "the letter shortens the period during which the recipient may seek verification

12

of the debt"); *Thome*, 567 F. Supp. 3d at 1072–80 (debt collection letter shortened time to dispute the debt from 30 days to 14 days).

In any event, notwithstanding the lack of any material date discrepancy, I was curious why the defendants decided at all to specify a date certain for Facchini to dispute her debt rather than simply reciting that she had 30 days from receipt of the notice as the statute says. I learned that the relevant federal regulation goes somewhat beyond the statute by instructing that a debt collector must specify "[t]he date that the debt collector will consider the end date of the validation period." 12 C.F.R. § 1006.34(c)(3)(i)–(iii).

The regulation goes on to say that the "validation period" is defined to start on "the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information." § 1006.34(b)(5). Because the letter here was dated June 8, 2022, it could be (but has not been) argued that the July 12 date ran afoul of the regulation to the extent that the regulation further provides that "[f]or purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is *at least five days* (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it." *Ibid.* (emphasis added). This would have required the defendants to allow Facchini until July 15, 2022 to dispute the debt (the date that is 30 days after the date of June 15, 2022, which is five days after June 8, 2022, excluding Saturday and Sunday, June 11 and 12, 2022). But in light of Facchini's concession that she actually received the letter on June 9 and in light of the regulation's allowance of the 30 days to be measured by reference not just to the date that a debt collector "may assume" the notice to

13

have been received but also and alternatively by reference to the actual date that "the consumer receives" the notice, it cannot be said that the July 12 date was shorter than the regulation allows.

Lastly, Facchini devotes much of her briefing to arguing that the letter was contradictory about whether she had to dispute the debt in writing or orally and that the letter violated yet a different provision of the FDCPA—15 U.S.C. § 1692f—which protects against the use of unfair or unconscionable means to collect a debt.[21] Alas, none of this was alleged in her complaint. And a plaintiff "is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss." *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017).

## Conclusion

The Court GRANTS the defendants' motion to dismiss. If Facchini has good faith grounds to file an amended complaint, then she may do so within 30 days. In the meantime, the Clerk of Court shall close this case subject to automatic re-opening in the event that Facchini chooses to timely file an amended complaint.

It is so ordered.

Dated at New Haven this 28th day of June 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[21] Doc. #18 at 9–11, 18–19, 23–25, 27–31.